**IN THE UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| In re: | ) | Case No. 15-33948 |
| | ) | |
| Edward H. Rensi | ) | |
| | ) | Chapter 11 |
| | ) | |
| Debtor(s) | ) | Judge Janet S. Baer |

To: See Attached Service List

**NOTICE OF MOTION**

**PLEASE TAKE NOTICE** that at 10:00 a.m. on May 28, 2019, we shall appear before the Honorable Janet S. Baer in Courtroom 615, 219 South Dearborn, Chicago, IL, 60604., and then and there present DEBTOR'S MOTION FOR ENTRY OF CHAPTER 11 DISCHARGE DUE TO HARDSHIP, which was served upon you as indicated on the attached Certificate of Service.

**Edward H. Rensi has filed a Motion with the court to obtain a hardship discharge pursuant to 11 U.S.C. 1141(d)(5)(B). Your rights may be affected. You should read these papers carefully and discuss them with your attorney, if you have one in this bankruptcy case. If you do not have an attorney, you may wish to consult one. If you do not want the court to grant the relief sought in the motion then you must notify the court be either appearing at the date and time stated above for hearing on the motion and/or file a written response to this motion prior to hearing.
IF YOU OR YOUR ATTORNEY DO NOT TAKE THESE STEPS, THE COURT MAY DECIDE THAT YOU DO NOT OPPOSE THE RELIEF SOUGHT IN THE MOTION/OBJECTION AND MAY ENTER AN ORDER GRANTING THAT RELIEF WITHOUT FURTHER HEARING OR NOTICE.**

BY:/s/Penelope N. Bach
Bach Law Offices, Inc.
P.O. Box 1285
Northbrook, Illinois 60062
847 564 0808

# IN THE UNITED STATES BANKRUPTCY COURT
## NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | |
|---|---|
| In re: | ) Case No. 15-33948 |
| | ) |
| Edward H. Rensi | ) |
| | ) Chapter 11 |
| | ) |
| Debtor(s) | ) Judge Janet S. Baer |

## DEBTOR'S MOTION FOR ENTRY OF CHAPTER 11 DISCHARGE DUE TO HARDSHIP

NOW COMES, the Debtor, Edward H. Rensi, ("DEBTOR") by and through his attorneys, Penelope N. Bach and Paul M. Bach of Bach Law Offices, Inc., and moves for entry of an Order of Discharge pursuant to 11 U. S. C. §1141(d)(5)(B) ("hardship discharge") despite the Debtor's failure to complete plan payments under the confirmed plan or in the alternative to Amend the Chapter 11 Plan. In support thereof the Debtor states as follows:

1. The instant bankruptcy proceeding was filed under Chapter 11 of the Bankruptcy Code on February 5, 2016.

2. On December 19, 2018, this Court confirmed Debtor's Third Amended Chapter 11 plan Docket 216 (Plan - Docket 195).

3. The Plan provides, "The Debtor will make all payments, except Administrative Claims, by taking a withdrawal of $1,092,494.27 from his exempt Pension Plan."

4. Since the filing this Chapter 11 case, all of the Debtor's non-exempt assets have been liquidated and funds tendered to either creditors or are being held in trust awaiting the Court's order of distribution.

5. Debtor's last remaining asset was his McDonald's Retirement Plan which has now been liquidated by Court Order and the funds will be distributed in accordance with the confirmed Chapter 11 Plan and this Court's Order.

6. The Debtor is currently unemployed and has been unable to obtain new employment at the age of 75.

7. There are no proceedings pending in which the Debtor may be found guilty of a felony of the kind described in 11 U.S.C. 522(q)(1)(A) or liable for a debt of the kind described in 11 U.S.C. 522(q)(1)(B).

8. The Debtor confirmed his Chapter 11 Plan in good faith and believed his McDonalds Retirement account was sufficient to pay off all amounts due under the Plan.

9. The Debtor was not aware of any changes to the McDonald's Retirement Account until he was in the final stages of working with McDonalds to get the funds released. It was 2019 when the Debtor and the undersigned counsel discovered that the Chapter 11 Plan was based upon the wrong retirement plan.

10. Upon receiving the Court Order to release the funds to the undersigned's trust account, McDonalds met and conferred and later mailed a distribution check the first week of May, 2019.

11. At the time the funds were released the gross amount allotted for the retirement plan was $1,529,671.74 (this is less 10% penalty). After the deductions made by McDonald's of $605,750.01 the payment tendered was only $923,921.73. *See attached*

12. This amount is not sufficient to pay off the Plan in full as proposed.

13. The Debtor has no remaining assets or sources of revenue in which to pay anything additional to creditors post the distributions from his retirement account.

14. The Debtor's inability to make payment in full in accordance with his confirmed plan was not due to the actions of the Debtor, but due to misinformation regarding his retirement account when the chapter 11 plan was drafted and confirmed.

15. The value, as of the effective date of the plan, of property actually distributed under the plan on account of each allowed unsecured claims is not less than the amount that would have been paid on such claim is the estate of the Debtor has been liquidated under Chapter 7 of this title on such date.

16. The Debtor has paid all administrative claims that the Court has ordered as of the filing of this motion, including allowed attorney fees, trustee fees and taxes.

17. Under the terms of the Confirmed Plan, Debtor was supposed to send:

    a. $296,000.00 to Molto Burgers LLC;

    b. $504,000.00 to BP Center LLC; and

    c. $250,000.00 to general unsecured creditors pro rata.

18. At the time McDonald's met and conferred to approve the early distributions from the Debtor's McDonald's Retirement Account, the value of the account was $1,832,611.47. (This value is less 10% penalty assessed by McDonalds.) Federal Tax withholdings was in the amount of $605,750.01. This leaves a net payment of $923,921.73.

19. After making the required payments to secured Creditors, (Molto Burgers LCC and BP Center LLC), the Debtor only has funds to pay general unsecured creditors the amount of $149,921.70. This amount is $100,078.30 short of making the payment required under the Confirmed Chapter 11 Plan.

20. 11 USC 1141 (d)(5)(B) states:

    at any time after the confirmation of the plan, and after notice and a hearing, the court may grant a discharge to the debtor who has not completed payments under the plan if:

    (i)    the value, as of the effective date of the plan, of property actually distributed under the plan on account of each allowed unsecured claim is not less than the amount that would have been paid on such claim if the estate of the debtor had been liquidated under chapter 7 [11 USCS §§ 701 et seq.] on such date;

    (ii)   modification of the plan under section 1127 [11 USCS § 1127] is not practicable; and

    (iii)  subparagraph (C) permits the court to grant a discharge; and

21. After the effective date of the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005, Pub. L. No. 109-8, 119 Stat. 23 (2005), completion of plan payments (rather than plan confirmation) discharges an individual debtor. In the alternative, an individual debtor may seek a discharge before completion of his plan payments, an early discharge, under either 11 U.S.C.S. § 1141(d)(5)(A) or (B). *In re Necaise*, 443 B.R. 483, 484 (2010)

22. Because 11 U.S.C.S. § 1141(d)(5)(A) generally prohibits the court from granting a discharge upon confirmation until payment completion but allows the court to order otherwise for cause, the more natural reading is that in the appropriate case, the court may grant a discharge upon confirmation, rather than only upon completion of payments. Such might be the case, for example, for an individual debtor who did not expect to make plan payments primarily from future earnings, consistent with the ordinary chapter 13 model, but rather contemplated a plan more consistent with the ordinary chapter 11 model, such as by distributions of property or, in the unusual case, by the issuance of securities by the debtor's business, perhaps from a new corporation to be formed by the debtor under the plan. *Id.*

23. The absence of a comparable hardship provision in 11 U.S.C.S. § 1141(d)(5)(B) suggests that an early discharge for an individual in a chapter 11 case hinges only on payment under the plan of at least liquidation value and the practicality of a later plan modification. *Id.*

24. In general, 11 U.S.C.S. § 1141(d)(5)(A) provides that an individual Chapter 11 debtor does not receive a discharge until completion of all payments under the plan. An earlier discharge may be granted pursuant to § 1141(d)(5)(B) once the property distributed under the plan equals the amount that would have been paid on liquidation under Chapter 7 and if modification is not practicable, but it is unclear whether this also requires a showing of cause or hardship as does the similar provision in 11 U.S.C.S. § 1328(b)(1). *In re Burgueno*, 451 B.R. 1, 1,

25. An individual debtor may seek a discharge before completion of the plan payments under either subsection (A) or (B) of § 1141(d)(5). Section 1141(d)(5)(A) allows for an exception to the general rule that an individual debtor will not be granted a discharge until completion of plan payments only "after notice and a hearing" if the court finds "cause." *In re Sheridan*, 391 B.R. 287, 290 (Bankr. E.D.N.C. 2008). Quoted from *In re Draiman*, 450 B.R. 777, 823, 2011.

26. The notice and hearing requirement mandates that creditors be given actual notice that a discharge prior to completion of the plan payments is being requested. *Id.*

27. The Code does not define "cause" for purposes of § 1141(d)(5)(A). *Beyer*, 433 B.R. at 888. Quoted from *In re Draiman*

28. Factors that courts look to for cause are: 1) the likelihood that the debtor will make all of the payments under the plan and 2) the assurance, in the form of collateral, that the creditors will be paid the sum they have been promised even if the plan payments are not made. *Sheridan*, 391 B.R. at 290. Quoted from *In re Draiman*

29. Here the debtor has liquidated all of his assets, including his exempt retirement plan. Upon the Court's Order, the funds will be distributed to the secured creditors and a portion to general unsecured creditors.

30. Upon distribution of the McDonald's funds to creditors, the Debtor has no future income outside social security and no remaining assets that can be distributed to creditors.

31. In addition, the distribution from the McDonald's funds will result in a substantial consummation of the plan. *Beyer*, 433 B.R. at 888. Quoted from *In re Draiman*, 450 B.R. 777, 823, 2011. Quoted from *In re Draiman*

32. If this case in converted to a case under Chapter 7 of the Bankruptcy code, creditors will get significantly less than they would through distributions of the funds from the McDonalds Retirement account as there is additional costs that must be endured by the Bankruptcy Estate.

33. It is in the best interest of all creditors to allow the hardship discharge pursuant to 1141(d)(5)(B) after distributions of all funds being held by the undersigned attorney. Wherefore, the Debtor, Edward H. Rensi, prays for an order of this Court as follows:

   a. Debtor's attorney is instructed to tender payment in the amount of $296,000.00 to Molto Burgers LLC;

   b. Debtor's attorney is instructed to tender payment in the amount of $405,000.00 to BP Center LLC;

   c. Debtor's attorney is instructed to tender payment to general unsecured creditors pro rata that totals $149,921.70;

    d.  Upon completion of tendering these payments and the completion of Debtor's Financial Management course, Debtor will be granted a discharge or in the alternative allow Debtor to Amend his Confirmed Chapter 11 Plan;

    e.  And for any other relief the court deems just.

Dated: May 17, 2019                                                                         Respectfully Submitted,

/s/ Penelope N. Bach
Penelope N. Bach, #6284659
Bach Law Offices
P.O. Box 1285
Northbrook, IL 60065
Phone (847) 564 0808